**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| JAMES J. KAUFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-0695 (TSC) |
| | ) | |
| JEH JOHNSON *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff James J. Kaufman is a Wisconsin resident who seeks to renounce his United States citizenship under 8 U.S.C. § 1481(a)(6).  (Compl. ¶ 1).  He commenced this action under the mandamus statute and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.  The mandamus claim has been dismissed (ECF No. 14). The remaining APA claim challenges the final agency decision issued on March 21, 2014, by the United States Citizenship and Immigration Services ("USCIS").  Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendants' Cross-Motion for Summary Judgment (ECF No. 20).  Upon consideration of the parties' submissions and the administrative record, and for the reasons explained below, the Court will grant Defendants' motion, deny Plaintiff's motion, and enter judgment accordingly.

1

## I. LEGAL STANDARD

On a motion for summary judgment in a suit seeking APA review, the standard under Fed. R. Civ. P. 56(a) does not apply. *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). Instead the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240 (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)).

Pursuant to the APA, the Court must set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The Court's review is "highly deferential" and begins with a presumption that the agency's actions are valid. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). The Court is "not empowered to substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but instead must consider only "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (citing *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)). The plaintiff bears the burden of establishing the invalidity of the agency's action. *Id*.

## II.  ANALYSIS

The Joint Appendix ("JA") (ECF No. 19-1) establishes that Plaintiff was serving a sentence for first-degree sexual assault of a minor when he mailed letters in 2004 and 2008 to USCIS seeking to renounce his United States citizenship.  On October 1, 2010, Plaintiff responded to USCIS' request for information, and USCIS held Plaintiff's renunciation request in abeyance pending his release from prison so that he could attend an in-person interview.  Plaintiff was released from prison in May 2013 to mandatory community supervision in Wisconsin, where he was to remain until January 2016.  As a supervisee, Plaintiff agreed to a list of 28 conditions, which included working full-time or searching for full-time employment by applying for at least 15 jobs weekly, maintaining a Wisconsin address, and obtaining permission from his supervising officer prior to leaving the State of Wisconsin (JA 192-93).

On October 10, 2013, Plaintiff appeared at USCIS' St. Paul Field Office for an interview with two senior immigration officers.  Plaintiff confirmed his understanding "of the consequences and ramifications of renunciation," including that a loss of citizenship "without acquiring the nationality of another country" would render him "stateless" and "an alien with regard to the United States."  (JA 3, USCIS Mar. 21, 2014 Dec.)  With that status, Plaintiff understood that he "could no longer obtain or use a U.S. passport" and that he "would lose the right to reside . . . or work in the United States."  In addition, he "would forfeit the other rights and privileges" he currently enjoyed as a U.S. citizen. (*Id*.)

Plaintiff's discussion at the interview about his "post-renunciation preparation and plans" is recounted as follows:

> You stated that if you are permitted to renounce your U.S. citizenship, you intend to depart from the United States. When asked how you would be able to leave the United States despite the ongoing conditions of your community supervision, you replied that if the Federal Government ordered you to leave, the State of Wisconsin would "go along and process me out and say to me, 'Be on your way.' " You stated the Wisconsin Department of Corrections would have to "process some things which they won't begin to do until they see an order from the Federal Government saying I have to leave." You provided no documents or information indicating that you have independently requested or obtained permission to depart from the United States in the event your request for renunciation is approved, or that such a request to travel could or would be approved by the State of Wisconsin if made in the future.
>
> You identified steps you have taken to prepare for your departure. They consist of conducting research on other countries' residency and citizenship requirements and employment and housing opportunities. You expect to have saved approximately $3,000 from your present employment. You asserted a belief that this sum will be minimally sufficient to buy a plane ticket and support yourself frugally in a foreign country until you are able to obtain foreign employment. You said you have sent written inquiries about immigrating to several countries, including Ireland, Germany, France, Italy, Poland, the Netherlands, Spain and Austria, but that none of the countries you contacted has offered you a means or opportunity to establish lawful residence, obtain lawful employment, or gain citizenship.
>
> When asked how you intend to depart from the United States and travel internationally without a U.S. passport if your renunciation request is approved, you stated, "If my renunciation is approved, I would become a stateless person, and I hope - greatly hope -that the United States is, on a case by case basis, willing to issue [me] a stateless person's travel document. [It's called] a United Nations Convention on Stateless Persons 28 September 1954 Travel Document." You reported that you have contacted the Department of Justice Office of the Attorney General, the Department of State, and the Department of Homeland Security in an attempt to find out how to apply for such travel document and that you have not been provided with such information.
>
> If the United States does not issue you a document comparable to the "Stateless Person's Travel Document" you referenced, you acknowledged you would need to leave the United States without any documentation. You expressed a belief that as a stateless person, a country that is a signatory to the 1954 Convention relating to the Status of Stateless Persons will be obligated to

4

allow you to enter, provide you with a travel document, work permit, personal
identification card, and residence permit. You asserted a belief that you would
be treated as any other lawfully resident alien in such foreign country.

(JA 3-4.)

The USCIS found that Plaintiff's request to renounce his U.S. citizenship was
voluntary, but that Plaintiff had "not demonstrated" that he "possess[ed] the intention
necessary to renounce" because he had "no credible plan to sever . . . ties to the United
States following . . . renunciation." (*Id.* at 7.)  Plaintiff's asserted plans were found to
be "based on . . . hopes and beliefs, which have no credible basis in fact." (*Id.*)  The
USCIS focused first on Plaintiff's inability to leave the country legally because of his
obligations to the state of Wisconsin to complete community supervision pursuant to
the agreed-upon terms.  It determined that even without that barrier, Plaintiff essentially
had no cogent plan to leave the country.  The USCIS found Plaintiff's "reliance on the
availability of a stateless travel document" to be "misplaced," and his claims about the
role of the federal government "wholly speculative" and unsupportive of his ability "to
pursue [his] stated plans." (*Id.*)  USCIS concluded that Plaintiff had "presented no
documents or evidence supporting any credible plan or ability" to sever ties with the
United States and to "*leave immediately*" following his renunciation.  (*Id.* at 8)
(emphasis supplied.))

As the administrative record shows, Plaintiff's agreement with the State of
Wisconsin--particularly to: (1) reside in the State until the expiration of his supervision
term, (2) report regularly to his supervising officer, (3) maintain full-time employment
(or a schedule seeking such employment), and (4) obtain permission before traveling

outside of the State—clashed completely with his purported intent to sever all ties to the United States and to leave the country immediately.  In addition, the administrative record contains ample support for the conclusion that Plaintiff's speculative exit plan was neither plausible nor credible.

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that the USCIS' March 21, 2014 Decision was reasonable, amply supported, and in compliance with the governing statute.  Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.[1]  A corresponding order will issue separately.


Date:  March 21, 2016


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[1]   The parties agree that Plaintiff's supervision term expired in January 2016.  The outcome of this action has no bearing whatsoever on Plaintiff's ability to submit a new renunciation request to the agency.